**UNITED STATES of America**

v.

**Clinton HILL.**

**Crim. No. 77–720.**

United States District Court, District of Columbia.

July 10, 1978.

Michael L. Lehr, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Alphonso W. Pendergrass, Washington, D. C., for defendant.

**32**

## MEMORANDUM AND ORDER

### I. *Facts*

CORCORAN, District Judge.

On November 2, 1977 defendant was operating in the District of Columbia a rented vehicle bearing a temporary Pennsylvania license tag. Two Metropolitan Police Officers, observing that the expiration date of the tag was illegible, made a traffic stop of the vehicle and asked defendant to produce his license and registration.

While defendant was in the process of procuring the car registration from the glove compartment, one of the officers observed a pistol therein. The defendant was then advised of his rights against self-incrimination and was thereafter arrested for carrying a pistol without a license.

Because the temporary tags were illegible and therefore invalid they were removed from the vehicle. Without the tag the vehicle could not be left standing on the public way [1] and accordingly was taken to the Third District Station and impounded.

Subsequently, the car rental company (which apparently had been contacted by defendant's wife) called the police and obtained permission to pick up the vehicle.

In anticipation of the vehicle's being returned to the car rental company, and in accordance with standard Metropolitan Police Department procedures, the police conducted an inventory search of the automobile. It included a search of its locked trunk. Inside the trunk, the police discovered an open blue zippered flight bag which, when searched, revealed: (1) a closed knapsack which in turn contained a loaded weapon and a quantity of heroin, and (2) a second loaded weapon found lying on the bottom of the flight bag. When defendant was made aware of these discoveries, he made a number of incrimina-

ting statements with respect to both the weapons and the heroin.

### II. *The Arrest of the Person*

Defendant does not, and indeed under the circumstances could not, dispute the propriety of the initial stopping of his vehicle and the request for his license and registration.[2]

■ However, defendant asserts that, having produced his license and registration, the subsequent search of the glove compartment resulting in the discovery of the unregistered pistol contained therein was improper. In view of the chronology of events leading to this discovery, we find this argument without merit. For it is the undisputed testimony of the arresting officers that the weapon was first noticed in the glove compartment when it was opened by defendant to secure. the registration. Accordingly, their subsequent request that defendant again open the glove compartment, the seizure of the weapon, and defendant's arrest resulting therefrom were all clearly proper.

### III. *Impoundment of the Vehicle*

■ The Government cites the following facts as justifying the impounding of defendant's vehicle: (1) The illegible temporary tags which formed the basis for the initial stop were removed and seized as evidence in support of the stop and because they were invalid. (2) Without tags the vehicle could not lawfully be left standing on the public way. D.C.Code § 40–104(a)(1). We find these facts properly supported impoundment of the vehicle.

### IV. *Inventory Search*

The legality of the inventory search conducted here requires a discussion of two issues: (1) the propriety of the search *vel non* and (2) assuming its propriety, was the

---

1. D.C.Code § 40–104(a)(1).

2. *United States v. Montgomery*, 182 U.S.App. D.C. 426, 561 F.2d 875, 879 (1977) ("The general principle that the police may stop for questioning when they have a founded suspicion of criminal behavior includes as a necessary cor-

ollary the rule that the police may stop and question the driver of a vehicle when an infraction of the motor vehicle code is suspected. *It may be enough that the license plates of the car are partially obscured . . . .*" (emphasis supplied))

search of the flight bag properly within the scope of such search.

### A. *Propriety of the Inventory Search*

■ We have little difficulty in disposing of the first issue. Given our holding *supra* that defendant's vehicle was properly impounded, it is now well established that the inventory search of the vehicle conducted by the police subsequent to removing it to the station was proper. *See e. g. South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *United States v. Reese,* 183 U.S.App.D.C. 1, 561 F.2d 894, 903 n. 17 (1977).

### B. *The Scope of the Inventory Search*

However, whether the scope of the inventory search properly included a search of the flight bag containing various items of contraband is an issue of a considerably more complex nature, for it requires a somewhat speculative [3] application and synthesis of the holdings in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) and *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

In *Opperman* the Court, in a 5–4 decision, approved an inventory search of a locked car impounded for overtime parking. During the search the police discovered drugs in a closed, but unlocked glove compartment. The Court justified inventory searches as incident to the caretaking function of local police to protect the community's safety. Specifically the Court noted the searches provide: (1) protection of the owner's property while in police custody, (2) protection of police from disputes over lost or stolen property, and (3) protection of police from possible danger. *Opperman, supra,* 428 U.S. at 369, 96 S.Ct. 3092. In accommodating the reasonableness requirement of the Fourth Amendment to such warrantless searches of impounded vehicles, the Court pointed to the public's reduced "expectation of privacy with respect to one's automobile." *Id.* at 367, 96 S.Ct. at 3096. Factors listed as contributing to this reduced expectation included: (1) Pervasive and continuing governmental regulation and controls which frequently result in examination of vehicles by the police and (2) the public nature of automobile travel in which both its occupants and contents are in plain view. *Id.* at 368, 96 S.Ct. 3092.

As further support for the validity of inventory searches, the Court cited to numerous state and federal court decisions which have sustained such procedures. *Id.* at 371, 96 S.Ct. 3092. It is significant for purposes of this case that the Court chose to quote specifically from *United States v. Gravitt*, 484 F.2d 375, 378 (5th Cir. 1973) *cert. denied* 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974) which stated that:

> [W]hen the police take custody of *any sort of container—be it an automobile, suitcase, or any other thing in which property may be stored—it is reasonable to search the container to itemize the property to be held by the police.* (emphasis supplied).[4]

Accordingly, it is not surprising that the Government relies heavily on *Opperman* to support the legitimacy of the search at issue here. However, for reasons discussed *infra*, it is not at all clear that the facts of this case compel the result which the Government suggests.

---

**3.** To quote Mr. Justice Rehnquist: "[T]he decisions of this court dealing with the constitutionality of warrantless searches, especially when those searches are of vehicles, suggest that this branch of the law is something less than a seamless web." *Cady v. Dombrowski,* 413 U.S. 433, 440, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973). We deem this observation no less cogent today.

**4.** In another pre-*Opperman* decision the Sixth Circuit reached a similar conclusion. *See United States v. Giles*, 536 F.2d 136, 140 (1976). Post-*Opperman* decisions supporting this view include: *United States v. Friesen*, 545 F.2d 672 (9th Cir. 1976) (decided after *Opperman* but prior to *Chadwick* discussed *infra*); *United States v. McCambridge*, 551 F.2d 865, 870 (1st Cir. 1977) (case involving inventory search of suitcase not belonging to defendant).

First, the Court in *Opperman* did not consider whether the police might search a locked trunk[5] of a car nor did it authorize the inspection of containers found therein which might themselves be sealed, removed and secured without further intrusion.[6] Moreover, we view Justice Powell's concurring opinion in *Opperman* as suggesting a result contrary to that suggested by the Government.[7]

As noted *supra* our primary area of concern here is not the validity *vel non* of an inventory search, but the proper scope of such a search. On this score, Justice Powell expressed the following view:

Against [the interest of the owner and the police in the protection of the owner's property] must be weighed the citizen's interest in the privacy of the contents of his automobile. Although the expectation of privacy in an automobile is significantly less than the traditional expectation of privacy associated with the home [cites omitted], the unrestrained search of an automobile and its contents would constitute a serious intrusion upon the privacy of the individual in many circumstances. But such a search is not at issue in this case. As the Court's opinion emphasizes, the search here was limited to an inventory of the unoccupied automobile and was conducted strictly in accord with the regulations of the Vermillion Police Department.[6] [Footnote 6 sets out the scope of the Vermillion Police Department regulations. Justice Powell specifi-

cally notes that these regulations do not provide for searching a locked trunk as was done here]. *Upholding searches of this type provides no general license for the police to examine all the contents of such automobiles.*[7] [In footnote 7, Justice Powell notes: "There is, however, no evidence in the record that in carrying out their established inventory duties the Vermillion Police do other than search for and remove for storage such property *without examining its contents* ] (Emphasis Supplied) *Opperman, supra* 428 U.S. at 379–380, 96 S.Ct. at 3102.[8]

In *United States v. Chadwick, supra* the Court in articulating the scope of the search incident to arrest exception to the Fourth Amendment's warrant requirement, refused to uphold the warrantless search, following a lawful arrest, of a locked footlocker which police had probable cause to suspect contained marijuana when such search was not conducted until the footlocker was secured at police headquarters.

The Court distinguished the search conducted in *Opperman* from that initiated in *Chadwick* in several respects. First, it noted that *Opperman* involved a noncriminal inventory search in which the "probable cause to search is irrelevant" and accordingly that "the salutory functions of a warrant simply have no application . . . [and] the constitutional reasonableness of inventory search must be determined on other bases." 433 U.S. at 10 n. 5, 97 S.Ct. at 2483.[9]

---

5. *Opperman, supra* 428 U.S. at 385 n. 1, 96 S.Ct. 3092 (Marshall, J., with whom Brennan and Stewart, JJ., joined dissenting).

6. *Id.* at 388 n. 6, 96 S.Ct. 3092.

7. As noted *supra*, Opperman was a 5–4 decision. Accordingly, we attach considerable significance to Justice Powell's concurring opinion.

8. In his dissenting opinion, Justice Marshall concurred with the foregoing statement of Justice Powell and added:
". . . that the Court's opinion does not authorize the inspection of suitcases, boxes or other containers which might themselves be sealed, removed and secured without further intrusion." (cites omitted) *Id.* 433 U.S. at 388 n. 6, 96 S.Ct. at 3107.

9. Under this analysis it would appear that the legality of two otherwise identical warrantless searches of one's possessions after they have been secured by police subsequent to a lawful arrest may hinge on whether that search is characterized as an inventory search or an investigatory search. We share the concern that others have expressed as to the apparent anomaly such an analysis presents *viz.* that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior. *See Opperman, supra* 428 U.S. at 385 n. 2, 96 S.Ct. 3092 (dissenting opinion); 66 Geo.L.J. 296 n. 317 (1977). We further note the practical difficulty raised by such analysis *viz.* the need to inquire in each case into the motives and prior factual knowledge of police. 66 Geo. L.J. 296 n. 317 (1977).

The second factor that distinguished the *Opperman* search was "the diminished expectation of privacy which surrounds the automobile." *Id.* at 12, 97 S.Ct. at 2484. Hence it was noted that:

Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile. *Id.* at 13, 97 S.Ct. at 2484.

Further explaining the nature of an individual's greater privacy interest in luggage, the Court said:

Respondents' principal privacy interest in the footlocker was, of course, not in the container itself, which was exposed to public view, but in its contents. A search of the interior was therefore a far greater intrusion into Fourth Amendment values than the impoundment of the footlocker. Though surely a substantial infringement with respondents' use and possession, the seizure did not diminish respondents' legitimate expectation that the footlocker's contents would remain

private. (Emphasis supplied) *Id.* at 13–14 n. 8, 97 S.Ct. at 2485.

In applying to the instant case the two factors by which the court distinguished the legal search conducted in *Opperman* from the illegal search conducted in *Chadwick*, it is first apparent that to the extent that the search of defendant's flight bag was an inventory search it, too, is distinguishable from *Chadwick*.

■ However, it is equally apparent from the Court's discussion in both *Opperman* and *Chadwick* of the varying levels of expectation of privacy in one's possessions, that the level of privacy expectation is a key factor in determining the reasonableness of a given search, be it inventory or investigatory.[10] Accordingly, notwithstanding the investigatory nature of the search in *Chadwick*, we view its holding that one has a considerably higher privacy interest in his luggage extremely relevant in determining if the search of defendant's flight bag was reasonable under the Fourth Amendment.[11] With this in mind, we move to consider the merits of the reasonableness of the search of defendant's flight bag.[12]

Notwithstanding Justice Powell's view that the scope of a warrantless search does not provide a general license for police to examine all of a vehicle's contents, the Government argues that the standard procedures employed here[13] which prompted

---

10. *Cf. United States v. Miller*, 442 F.Supp. 742, 754 (D.Me.1977) (". . . the Supreme Court has consistently interpreted Fourth Amendment questions in the context of privacy-oriented standards.")

11. As noted *supra*, the Court in *Chadwick* indicated that where inventory searches were involved, probable cause was irrelevant and, accordingly, that "the constitutional reasonableness of [such] searches must be determined on other bases." 433 U.S. at 10 n. 5, 97 S.Ct. at 2483 n. 5 [2476]. Though the Court fails to enlighten us as to what these "other bases" should be, we think that both *Chadwick* and *Opperman* support our conclusion that the level of privacy expectation should serve as at least one such basis.

12. As is evident from the foregoing, we view the search of defendant's flight bag as being an inventory search of luggage rather than as being merely a part of, or incidental to the inventory search conducted of his automobile. This

characterization is appropriate in that the reasonableness of the inventory search of the flight bag raises issues separate and apart from the inventory search of defendant's automobile. Such bifurcated analysis is supported by Justice Powell's statement in *Opperman*, 428 U.S. at 380, 96 S.Ct. at 3102 that "[u]pholding [inventory searches of automobiles] provides no general license for the police to examine all the contents of such automobiles" as well as by the *Chadwick* Court's discussion of the "significant differences between motor vehicles and other property [based on a diminished expectation of privacy] which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts." 433 U.S. at 12, 97 S.Ct. at 2484.

13. At a hearing on defendant's Motion to Suppress, the officer who conducted the search indicated that inventorying a locked trunk and its contents is in accord with standard D.C.

the search of defendant's flight bag are consistent with the purposes of inventory searches and are therefore in compliance with the reasonableness requirement of the Fourth Amendment. Specifically, the Government asserts that: "Here the sole purpose in opening the trunk and examining the contents was to protect them from loss and to protect the police against a claim that they caused the loss of personal property." [14] While the legitimacy of these concerns cannot be disputed, they must be weighed against defendant's expectation discussed *supra* that the contents of his flight bag not be disturbed. In weighing these countervailing interests, we think several factors detract from the force of the Government's argument.

First, insofar as the Government justifies the search as a protection against false claims, we note Justice Powell's observation that:

"It is not clear, however, that inventories are a completely effective means of discouraging false claims since there remains the possibility of accompanying such claims with an assertion that an item was stolen prior to the inventory or was intentionally omitted from the police records.[15] 428 U.S. at 378, 379, 96 S.Ct. at 3102.

Second, with respect to the Government's concern for loss of property, to the extent that the existing police procedure requires the removal and storage of defendant's flight bag we fail to perceive how the inventory conducted of its contents in any way adds to their protection. And further, it is not at all clear that the police could have been held responsible for the loss of items contained in the locked trunk of defendant's car.[16]

Finally, in determining the reasonableness of the search conducted here, we think it appropriate to apply the principle that:

[E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of . . . abridgment must be viewed in the light of less drastic means for achieving the same basic purpose.[17]

■ Applying this principle to the search of defendant's flight bag, it strikes us that the various countervailing interests discussed *supra* could just as well, if not better, have been served if defendant's flight bag had merely been sealed, removed, and secured without further intrusion,[18] the un-

---

Metropolitan Police procedures. Though this has the salutary effect of meeting the court's concern in *Opperman* that the scope of the inventory search not be left to an officer's discretion, it does not answer the question of whether the procedure itself meets the reasonableness requirement of the Fourth Amendment. *See Cooper v. California*, 386 U.S. 58, 61, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

**14.** Government's Opposition to Defendant's Motion to Suppress Tangible Evidence and Statements at 4. We note that the Government does *not* rely on an additional reason noted in *Opperman* which is sometimes used to support inventory searches *viz.* the protection of police from potential danger. *Opperman, supra* 428 U.S. at 369, 96 S.Ct. 3092.

**15.** *See also Opperman*, 428 U.S. at 391 and n. 10, 96 S.Ct. 3092 (dissenting Opinion)

**16.** In *Opperman supra*, 428 U.S. at 378–379 n. 3, 96 S.Ct. 3092, Justice Powell noted that the South Dakota Supreme Court had held that the removal of objects in plain view, and the clos-

ing of windows and locking of doors, satisfied any duty the police department owed the automobile's owner to protect property in police possession.

**17.** *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960) (footnotes omitted). Though admittedly this "less drastic means" test has traditionally been applied to legislative enactments touching on first amendment rights, we think it no less applicable to administrative regulations touching on other personal liberties such as those encompassed within the Fourth Amendment.

**18.** *See Opperman supra*, 428 U.S. at 388 n. 6, 391 n. 10, 96 S.Ct. 3092 and cases cited therein. In suggesting this alternative, we do not intend *sub silentio*, to countenance that part of the standard Metropolitan Police inventory procedures which provides for the opening of locked car trunks. Some courts have ruled such a procedure invalid, at least when it is done incident to the impoundment of a vehicle which will ultimately be returned to its owner. *See e.*

broken seal ultimately testifying to the lack of tampering. This procedure would impose no further burden or expense than that currently incurred by the Police Department, in that it already routinely removes and stores such personalty. The suggested procedure would in no way affect the protection afforded to defendant's property under existing procedures, but it would enhance the protection afforded police against false claims by removing the possibility of allegations of impropriety during the inventorying process. Finally, such procedure would serve to accommodate the considerable interest of an individual in safeguarding his possessions from unreasonable police intrusions. *See Chadwick supra.*

### V. Conclusion

In view of the foregoing we find that the search of defendant's flight bag was unreasonable under the Fourth Amendment and, that the items seized and subsequent statements made regarding them must be suppressed.

Accordingly, it is this 7th day of July, 1978 hereby

ORDERED that Defendant's Motion to Suppress Tangible Evidence and Statements is denied with respect to suppression of the weapon found in the glove compartment of defendant's car, and it is further

ORDERED that Defendant's Motion to Suppress Tangible Evidence and Statements is granted with respect to items contained in his flight bag and all subsequent statements made which pertained to such items.

g. *United States v. Lawson,* 487 F.2d 468 (8th Cir. 1973); *Mozzetti v. Superior Court,* 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971) (en banc). While the Court in *Opperman* did not directly address the issue, as noted *supra* Justice Powell appeared to attach some significance to the fact that the standard procedures followed by the police in that case did not include opening locked trunks. 428 U.S. at 380 n. 6, 96 S.Ct. 3092. However as noted by Justice Black in *Coolidge v. New Hampshire,* 403 U.S. 443, 509–510, 91 S.Ct. 2022, 2060, 29 L.Ed.2d 564 (1971). "The test of reasonable-

ness cannot be fixed by *per se* rules; each case must be decided on its own facts." In justifying the opening of defendant's locked trunk here, the police, in addition to relying on their standard procedures, also pointed to the necessity of emptying the contents of the trunk prior to releasing the car to the car rental agency to which it belonged. Without passing on the validity of opening locked trunks incident to inventory searches under other circumstances, we hold that such procedure was warranted in the factual setting of this case.