**UNITED STATES of America**

**v.**

**Charles J. DAVIS.**

**Crim. A. No. CR80–47A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 24, 1980.

Andrew J. Ekonomou, Asst. U. S. Atty., Atlanta, Ga., for plaintiff.

Jay L. Strongwater, Asst. Federal Public Defender, Atlanta, Ga., for defendant.

### ORDER OF COURT

HORACE T. WARD, District Judge.

The defendant Davis has moved for suppression of evidence seized in a search of his attache case by two agents of the Federal Bureau of Investigation. Following an evidentiary hearing, the United States Magistrate recommended that the motion be denied. This court rules that the motion should be granted and the seized evidence suppressed.

Charles J. Davis was arrested on March 24, 1980 at a bar in Princess Anne, Mary-

land. He was briefly searched for weapons incident to the arrest and the agents then prepared to leave the bar with him in their custody. As they were doing so, Davis indicated to them that a briefcase beside his bar stool belonged to him. One of the two agents took the briefcase and the three departed for the FBI Resident Agency in Salisbury, Maryland, approximately twenty miles away.

En route, the defendant told one of the FBI men, Special Agent Mayo, that he would like to turn the attache case over to a relative or representative of a relative, and asked the agent if he had any objection to this. (T.9) Mayo said that he did not. Upon reaching Salisbury Davis was permitted to arrange by telephone for the briefcase to be picked up at the sheriff's department across the street from the FBI office. Before it was turned over to the sheriff, however, Agent Mayo had Special Agent Twigg, the other arresting officer, make an inventory search of its contents. This inventory was made, it was stated at the hearing, to protect the agents from subsequent charges of theft. (T.30) Agent Mayo was directly involved in the investigation of the defendant and both agents knew the nature of the charge, a mail fraud crime in which documentary evidence would be crucial to any conviction. (T.19, 31) Davis had not been told beforehand that a search would be made, and they did not ask for his consent prior to making it. (T.21) No attempt was made to secure a search warrant, (T.22, 34) but Davis did not object as Twigg went through the contents of the unlocked briefcase and seized all documents thought to be incriminating. (T.28) The agents did not make an inventory of the contents of the valise, although two days later Agent Mayo made a written record of the material which was removed because of its evidentiary value. (T.23) Davis was never given a copy of this list. The remaining contents and the attache case itself were turned over to the sheriff's office without any list attached. (T.23)

The Government maintains that the search of Davis' attache case was a proper inventory search under the exception to the warrant requirement recognized by the Supreme Court in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). No other exception is relied upon. The defense contends that the briefcase was protected by Davis' privacy expectations as was the luggage searched in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and that the Government has failed to meet its burden of justifying the warrantless search. This court agrees, and the motion to suppress the evidence seized thereby will be granted.

■ The Warrant Clause of the Fourth Amendment was adopted to prevent the abuses rife in pre–Revolutionary times. It is a strictly construed provision: "[t]he mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment." *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979). Thus the requirement that searches only be made pursuant to lawful warrants issued by an impartial magistrate is subject only to a few "jealously and carefully drawn" exceptions, *Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958), those which courts have found necessary to allow for the occasional exigencies of law enforcement. Among these is the exception for inventories of articles in police custody which was created in, e. g., *South Dakota v. Opperman, supra*.

In *Opperman*, the Court upheld the constitutionality of a municipal police practice of regularly itemizing the contents of impounded automobiles. Basing its decision in large part on the diminished expectation of privacy in a vehicle, the plurality wrote that inventories were necessary for at least three reasons: to protect the owner's property, to protect the police from unwarranted charges of theft, and to protect the police from potentially dangerous items. 428 U.S. at 369, 96 S.Ct. at 3097. *See also United States v. Staller*, 616 F.2d 1284, 1289

(5th Cir. 1980). It was significant to the Court that in the facts of the case the owner was not available to otherwise provide for the safekeeping of his property. *Id.* at 375, 96 S.Ct. at 3100. On the basis of the above factors the state court's suppression of the seized evidence was reversed.[1]

Even were the instant case not readily distinguishable from *Opperman* and other inventory cases, a significant recent development in interpretations of the Fourth Amendment has increased the burden borne by the Government when it seeks to justify inventories of personal effects. In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), which was not an inventory case, the Supreme Court found unconstitutional the warrantless search of a footlocker examined incident to the owners' arrest because of the respondents' great privacy rights in it. The Court drew a clear distinction between searches of automobiles and searches of personal luggage which this court is bound to follow:

> The factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker. Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile.

*Id.* at 13, 97 S.Ct. at 2484. This holding applies with equal or even greater force to a briefcase, often a storage place for effects even more personal and private than those commonly contained in a suitcase or trunk.

*Chadwick* was reaffirmed in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), an opinion which attempted to clarify with finality the Court's high regard for the privacy interest inherent in personal effects. State officers acting on an informant's tip stopped a taxi in which the respondent was riding and removed his suitcase from the trunk. They proceeded to search it without consent and discovered incriminating evidence. The Supreme Court of Arkansas ruled that the evidence should have been suppressed under the authority of *Chadwick*, since there had been no exigent circumstances which prevented a warrant from being obtained. The United States Supreme Court granted certiorari to further explain *Chadwick*, and reaffirmed the strong privacy interest in personal luggage which the Fourth Amendment protects. It held that there is no difference between searches of personal luggage taken from a vehicle and luggage found elsewhere.

Few circuit courts, including the Fifth, have had occasion to address the impact of *Chadwick* and *Sanders* on inventories of luggage, although many have mentioned the issue.[2] *See, e. g., United States v. Smith*, 621 F.2d 483 (2d Cir. 1980); *United States v. Vickers*, 599 F.2d 132 (6th Cir. 1979). The Eighth Circuit, however, has squarely dealt with the suggested conflict. In *United States v. Bloomfield*, 594 F.2d 1200 (8th Cir. 1979), the panel upheld a district judge's suppression of evidence seized from a knapsack found inside an impounded automobile. The court held that the knapsack was properly inventoried as a unit, but that the inventory exception did not permit the search of the pack's interior which followed. Wrote the court:

> The commonly avowed purposes of an inventory search are (1) "the protection of the owner's property while it remains

---

1. On remand the Supreme Court of South Dakota again found the inventory search unconstitutional, basing its decision the second time on the state constitution. *State v. Opperman*, 247 N.W.2d 673 (S.D.1978).

2. The Fifth Circuit, which previously lauded inventory searches, *see United States v. Grav-*

*itt*, 484 F.2d 375, 378 (1973), has held in at least one post–*Chadwick* case that searches of private belongings within seized automobiles pursuant to an inventory exception may be unconstitutional. *United States v. Miller*, 608 F.2d 1089, 1101 (5th Cir. 1979) (citing *Sanders*).

in police custody"; (2) "the protection of the police against claims or disputes over lost or stolen property"; and (3) "the protection of the police from potential danger." *South Dakota v. Opperman*, 428 U.S. at 369 [96 S.Ct. at 3097].

In this instance, because the knapsack was tightly sealed and there was no danger of anything slipping out, the first two purposes are better served if the knapsack is inventoried as a unit. In this way the knapsack, which is locked up as a whole in police headquarters, has never been removed, reshuffled and replaced. To our minds, this would minimize the possibility of false claims against police by the owner.

*Id.* at 1202. Similarly, the United States District Court for the District of Columbia found that inventory searches which intrude into areas protected by *Chadwick* exceed the constitutional scope of that exception to the Warrant Clause. In *United States v. Hill*, 458 F.Supp. 31 (D.D.C.1978), Judge Corcoran suppressed evidence from a flight bag found by police in the trunk of an impounded automobile. He noted that the purpose of inventorying items in police custody would have been far better served by sealing and securing the flight bag.

In light of the newly–stressed distinctions between automobiles and personal luggage it is quite clear that the Government's burden of justifying the inventory of defendant's briefcase is a heavy one. That burden has not been carried in the case at bar. The attache case was to be picked up by Davis's uncle or housekeeper (T.15); neither the FBI nor the sheriff were to keep it for any significant length of time. Furthermore, unlike in *Opperman* the owner of the inventoried object was present and able–in fact, was attempting–to make a disposition of it without police interference.

■ It appears from the facts that it would have been just as effective a means of protecting the agents to merely seal the attache case in Davis's presence. This would have completely protected the FBI and sheriff without chancing a Fourth Amendment violation. *United States v.*

*Hill, supra*, 458 F.Supp. at 36–37. When law enforcement agents have two courses of action open to them, one possibly violative of the Warrant Clause and the other clearly permissible, the Constitution teaches us that they must choose that path which remains within the bounds of the Bill of Rights. E. g., *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960).

The agents apparently had no need to make an inventory search of the defendant's briefcase. Although Special Agent Mayo was working on defendant's case and both agents were aware of the charges against Davis, and although they never made an inventory list, the court does not hold that the inventory exception was used here as pretext for an investigatory search. Rather, it is merely our conclusion that the search which was carried out was unreasonable. Exceptions to the Warrant Clause are narrowly drawn to the extent "necessary to accomodate the identified needs of society," *Arkansas v. Sanders, supra*, 99 S.Ct. at 2591. When the rationale which supports a claimed exception is absent, as here there was little or no real danger of a false claim had the briefcase simply been sealed, then the warrant requirement may not be ignored. A warrantless search must be "strictly circumscribed by the exigencies which justify its initiation," *Terry v. Ohio*, 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968). *See Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 2411–15, 57 L.Ed.2d 290 (1978).

In view of the significant differences between automobiles and personal luggage and the absence of a real need to protect the FBI agents, the goals underlying the *Opperman* exception were served little if at all by Agent Twiggs' invasion of the briefcase. Balanced against the limited utility of the instant inventory search are the strong privacy rights and expectations recognized in *Chadwick* and *Sanders*.

■ The court therefore finds that the Government has failed to meet its burden of justifying the inventory, *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d

409 (1970), and holds that the search was constitutionally impermissible. The Magistrate's Report and Recommendation is OVERRULED and the defendant's motion to suppress is GRANTED.