413 A.2d 894 (1980)
In the Matter of B. K. C., Appellant.
No. 13779.
District of Columbia Court of Appeals.
Argued June 26, 1979.
Decided January 9, 1980.
Rehearing and Rehearing En Banc Denied April 24, 1980.
*895 Katharine Kravetz, Public Defender Service, Washington, D. C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D. C., was on brief, for appellant.
*896 Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at the time the brief was filed, and Richard W. Barton, Deputy Corporation Counsel, Washington, D. C., were on brief, for appellee.
Before NEWMAN, Chief Judge, GALLAGHER, Associate Judge, and PAIR, Associate Judge, Retired.
NEWMAN, Chief Judge:
This is an appeal from a delinquency adjudication based upon a finding that appellant was guilty of petit larceny, D.C.Code 1973, § 22-2202. The issue presented is whether the motions judge committed reversible error in denying appellant's motion to suppress testimony that a shirt, allegedly stolen from Woodward & Lothrop, Inc., was discovered during a warrantless search of appellant's briefcase taken from the possession of his companion.[1] In Part I, we set forth the relevant facts as well as the suppression proceedings and the trial. In Part II, we discuss whether appellant, the owner of the briefcase, had a legitimate expectation of privacy in the briefcase protected by the Fourth Amendment. In Part III, we discuss the nature of the Fourth Amendment protection and the various exceptions to the warrant requirement relied upon by the government to justify the search. We hold that appellant had a legitimate expectation of privacy protected by the Fourth Amendment; that the search of the briefcase cannot be upheld under any recognized exception to the warrant requirement, and thus the evidence resultant from the search should have been suppressed. We reverse.

I

A. Facts

Insofar as relevant to the suppression issue, the evidence was as follows. On December 16, 1977, Mary Julia Potts, a Special Police Officer employed by Woodward & Lothrop, Inc., noticed appellant who was carrying a brown leather briefcase and his companion, D.A.V., on the second floor of the "Woodies" store located at 10th and F Streets, N.W., Washington, D.C. Ms. Potts recognized both juveniles from prior contacts but did not know either by name. She then saw appellant stop at a shirt display, pick up a shirt, bend down and stand up without it. She followed the two youths into an elevator that took all three of them to the fourth floor. During the ride, appellant handed the briefcase to D.A.V. At this point for the sake of clarity, we separate the evidence adduced at the suppression hearing from that adduced at trial.

B. Suppression Hearing

Officer Potts was the only witness called by the government at the suppression hearing. She testified that when the three alighted from the elevator at the fourth floor she asked a security officer, Officer Townsend, to place D.A.V. under arrest and take him to the first floor security office while she pursued appellant who had darted toward an escalator and up to the seventh floor. Appellant then ran to the sub-basement where he was placed under arrest by other officers. Officer Potts further testified that the briefcase in question was opened in the security office and contained a "Woodies" shirt and various looseleaf papers.[2]
Appellant argued that the search of the briefcase was invalid because either (1) probable cause for the arrest did not exist[3] or (2) even if probable cause did exist, a warrant was necessary to search the briefcase pursuant to United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). The court denied the motion to *897 suppress, making no findings of fact and stating no reasons for its decision.

C. Trial Proceedings

After Officer Potts again testified at trial, the government rested. Appellant's motion for judgment of acquittal was denied, and the defense called Officer Townsend. His testimony in pertinent part was:[4]
Detective Mary Potts . . . asked if I would escort a juvenile [D.A.V.] down to the security office, issue him a bar notice and get him out of the store. I was not informed exactly why I was doing this. I recall escorting him downstairs by escalator.
When we got near the Eleventh Street door, the juvenile took a swing at me and turned and ran out the store. At that point, I gave chase and apprehended him with the help of two Metropolitan Police Officers on the corner of 11th and F. Took him back to the security office at that time.
Q. Why did you take him back to the security office?
A. Well, at that time, I was going to charge him with assaulting a police officer.
Q. And did you charge him with assaulting a police officer?
A. No, I didn't. No.
Q. Why didn't you?
A. A search of the bag that [D.A.V.] was carrying revealed a shirt that was property of Woodward and Lothrop.
Q. Were you aware there was a shirt in that bag prior to the arrest?
A. No, I wasn't.
Q. And you had no intention to arrest [D.A.V.] until he swung at you?
A. No, I had no intention.
On cross-examination Officer Townsend's testimony in pertinent part:
Q. Were you present when the search of the briefcase was made?
A. Yes, I made the search myself.
Q. Would you describe exactly what happened, please?
A. Okay. We brought [D.A.V.] into the security office. . . . We took him into the security office in the presence of the two Metropolitan Police Officers. At that time, he was presently, was served, and the bag he was carrying was searched. I opened that up, pulled out a shirt.
The defense then called D.A.V. who testified concerning his arrest and the search of the briefcase. That testimony in pertinent part:
[Officer Townsend] grabbed me. The lady . . . told him to take me downstairs, follow me out of the store. So he was taking me downstairs to the first floor, side door. The man kept pushing me. I turned around and I smooched him or something, then I ran out the door. Then he started chasing behind me.
* * * * * *
And then police officer . . . on a scooter grabbed me.
* * * * * *
Took me back to the store. Man with the black hair took me in the store, gave me to a taller man with blond hair and he went down the subway to get, catch them, him [appellant] and his friend.[5]
Q. Then what were you, brought into a room or
A. Took me to a room.
Q. What happened in the room. . .
A. He handcuffed me.
Q. Anything else?
A. Then [appellant] and them came in.. . .
Q. What happened with the briefcase and the shirt?

*898 A. The man came in the room with it later on.
Q. And what happened, did anybody look in or what did they do with it.. . .
A. [T]he man opened up the briefcase and seen the shirt in it and then start looking through his papers.
* * * * * *
And then they said . . . shoplifters. So he said he was going to charge me and him with shoplifting and he was going to charge his friend with disorderly conduct.
On cross-examination D.A.V. further testified about the briefcase:
Q. So [appellant] opened [the briefcase] up and he showed that he had books.
A. No, no, the security guard opened it up down the room and showed that he had books in it.
The prosecutor then questioned D.A.V. about how he got possession of the briefcase.
Q. The [appellant] gave you the briefcase at some point at that time, is that correct?
A. Yes.
Q. Would you describe the circumstances again, please? How did he do it?
A. He said . . . will you hold these for me, this lady's talking about me.
Q. All right, then what happened?
A. I held them and the elevator stopped and he went right and I went left.
* * * * * *
Q. Then what happened?
A. The lady and a man came running back downstairs. The lady pointing at me, there he go. . . . The man grabs me, takes me to the first floor.
* * * * * *
I turned around, he jumped, smooched him, ran out the door, police officer grab me.
Q. Okay. And what did you do with the briefcase while you were running?
A. Had it in my hand.
* * * * * *
Q. You said when you were running away from the store detective, you opened the briefcase and you were attempting to get rid of the shirts that you had taken.
A. I only had one shirt in there. I was trying to throw that away, trying to run on down the alley. But he cut me off.
At the end of all the testimony, the court found appellant guilty, and noted that it did not credit the testimony of Officer Townsend and D.A.V.[6]

II
In light of the Supreme Court's recent decision in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), initially we must address the issue of whether appellant, who seeks the exclusion of the questioned evidence, had a legitimate expectation of privacy protected by the Fourth Amendment as to the search in question.
In Rakas v. Illinois, supra, the Supreme Court had occasion to address at length the concept of legitimate expectation of privacythe reasonable expectation of freedom from government intrusionwhich is central to a Fourth Amendment claim. The case involved a search of an automobile stopped by the police on the suspicion that the auto was the getaway car in a robbery. The officer seized a box of rifle shells from the glove compartment and a sawed-off rifle under the front passenger seat. The petitionerswho did not include the owner-driverwere then placed under arrest. Before trial they moved to suppress the evidence *899 seized alleging a violation of the Fourth and Fourteenth Amendments. The Court, in holding that suppression was properly denied "reaffirmed the principle that the `rights assured by the Fourth Amendment are personal rights [which]. . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." Id. 99 S.Ct. at 428 quoting Simmons v. United States, 390 U.S. 377, 389, 88 S.Ct. 967, 973, 19 L.Ed.2d 1247 (1968); Alderman v. United States, 394 U.S. 165, 171-72, 89 S.Ct. 961, 965-66, 22 L.Ed.2d 176 (1969).[7]
The Court reviewed the doctrine of standing, finding that it has always involved two inquiries: "first, whether the proponent of a particular legal right has alleged `injury in fact,' and, second, whether the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties." Rakas v. Illinois, supra, 99 S.Ct. at 428. This review led inexorably to the conclusion that there was no further need to consider the matter of standing as separate and distinct from the merits of the Fourth Amendment claim, since that claim is based upon the question of "whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it," id. at 429. Accordingly, one who seeks to exclude evidence from his own criminal trial must first prove that he had a legitimate expectation of privacy in the place searched or the item seized.
In defining the scope of "legitimate expectation of privacy," the Court explicitly rejected the "legitimately on the premises" test of Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697 (1960), as creating "too broad a gauge for measurement of Fourth Amendment rights." Rakas v. Illinois, supra, 99 S.Ct. at 429. Rather, the Court found that a criminal defendant may meet his burden of establishing a legitimate expectation of privacy by reference to "a source [of that expectation] outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." Id. at 431 n. 12. Thus, "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy" by virtue of that property interest which includes the right to exclude others. Id. Establishing the existence of a property right, though, need not be fundamental to establishing an expectation of privacy, id.; and proof of a property interest alone "may not be sufficient to establish a legitimate expectation of privacy." Id. Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
Since the petitioners in Rakas exclusively relied upon the "legitimately on the premises as a basis", test for asserting a claim, the Court concluded that the petitioners had failed to prove that a Fourth Amendment right of theirs had been violated. As stated before, "they asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." Rakas v. Illinois, supra, 99 S.Ct. at 433. Thus, they were compelled to establish, in another way, a recognizable expectation of privacy between passengers in an automobile and the glove compartment and areas under the seat of the car in which they were riding. In the absence of such proof, the Court stated that "[l]ike the trunk of an automobile, *900 these are areas in which a passenger qua passenger simply would not normally have a legitimate expectation of privacy." Id.
In sum, Rakas appears to have done little to change Fourth Amendment law. For example, (1) the concept of standing has been subsumed under Fourth Amendment doctrine; (2) the assertion of the defendant's own legal rights which had already been defined as a defendant's legitimate expectation of privacy in the place searched or the item seized, see Katz v. United States, supra, was reaffirmed; (3) an expectation of privacy can still be proven, under most circumstances, by a possessory or property interest in the item seized or the place searched as well as by other sources recognized by society as creating such an interest; (4) "automatic" standing was not in issue, and thus not affected by the Court's ruling. The only innovation that we can discern from the opinion is that the "legitimately on the premises" test has been rejected. Accordingly, "[while] legitimate presence on the premises is [not] irrelevant to one's expectation of privacy . . it cannot be deemed controlling." Rakas v. Illinois, supra at 433.[8]
Applying these principles to the case sub judice, we note that appellant is seeking to exclude evidence from his own criminal trial. Thus, the only remaining question is whether appellant had a legitimate expectation of privacy which was violated by the search of his briefcase taken from his companion's possession. The evidence suggests, and there is no dispute, that appellant owned the property in question. Without appellant's relinquishment of possession, we would deem his property interest alone as sufficient to establish appellant's legitimate expectation of privacy. Therefore, in view of the transfer of possession, we must determine whether appellant still retained a legitimate expectation of privacy such that his property in the hands of another would be free from government intrusion.[9]
Although we recognize that the Fourth Amendment protects "people not places," Katz v. United States, supra, 389 U.S. at 351, 88 S.Ct. at 511, and privacy not property, Warden v. Hayden, 387 U.S. 294, 304, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782 (1967), from unreasonable searches and seizures, we note that the place or items searched is often a relevant factor in determining whether the appellant has a reasonable expectation of privacy in the item seized or searched. The nature of this property, a briefcase, no less than the luggage in Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and the footlocker in United States v. Chadwick, supra, "is a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy." Arkansas v. Sanders, supra, 99 S.Ct. at 2592, citing United States v. Chadwick, supra, 433 U.S. at 13, 97 S.Ct. at 2484.[10] Thus, even though the briefcase was both exposed to the public and unlocked,[11] the nature of the briefcase as a repository of personal effects creates a high expectation that its contents will remain private and free from government intrusion even in the hands of another. We find further support for this conclusion from appellant's use of the briefcase as a repository for his own personal papers.
*901 By applying the Chadwick analysis to the item searched, we do not mean to suggest that a proponent of a motion to suppress need establish the same high degree of expectation of privacy to command Fourth Amendment protection. We only suggest that since appellant had given up actual possession of the briefcase, we must decide whether that relinquishment diminished his expectation of privacy in its contents enough to deny Fourth Amendment protection. We are convinced that under these circumstancesthe nature of the item and appellant's use of itestablished a privacy interest sufficient to trigger Fourth Amendment protection in spite of the relinquishment of possession. We reiterate that "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy" by virtue of that property interest alone. Rakas v. Illinois, supra, 99 S.Ct. at 431 n. 12. We conclude that appellant had a legitimate expectation of privacy which was fully protected by the Fourth Amendment.

III
We now turn to a brief discussion of the nature of the protection afforded by the Fourth Amendment and whether the warrantless search under the circumstances of this case was constitutionally reasonable, i. e., within one of the established expectations to the warrant requirement.
Our review of the issue is hampered since, as stated before, the trial court neither made findings of fact[12] nor expressed reasons for denying the motion to suppress. In the absence of such findings, we must determine whether the court's denial of the motion to suppress is sustainable under any reasonable view of the evidence. Vance v. United States, D.C.App., 399 A.2d 52, 55 (1979); Brooks v. United States, D.C.App., 367 A.2d 1297, 1304 (1976).
The Fourth Amendment provides
[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.
The Court has interpreted this Amendment as mandating "adherence to the judicial processes," United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951), by providing "the detached scrutiny of a neutral magistrate," necessary to protect against improper searches and more reliable than "the hurried judgment of a law enforcement officer `engaged in the often competitive enterprise of ferreting out crime.'" United States v. Chadwick, supra, 433 U.S. at 9, 97 S.Ct. at 2482, quoting Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). See Wong Sun v. United States, 371 U.S. 471, 481-82, 83 S.Ct. 407, 413-14, 9 L.Ed.2d 441 (1963). Additionally, a magistrate's scrutiny "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." United States v. Chadwick, supra, 433 U.S. at 9, 97 S.Ct. at 2482. For these reasons, in most cases "a search of private property must be both reasonable and performed pursuant to a properly issued search warrant," Arkansas v. Sanders, supra at 2590. See Chimel v. United States, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); Schmerber v. California, 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966), satisfying objective standards of *902 probable cause and ensuring that the intrusion is based upon a legitimate governmental interest. See Torres v. Puerto Rico, 442 U.S. 465, 471, 99 S.Ct. 2425, 2429-2430, 61 L.Ed.2d 1 (1979). "Thus the most basic constitutional rule in this area is that `searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment,'" Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971), quoting Katz v. United States, supra, 389 U.S. at 357, 88 S.Ct. at 514; and "[t]he mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment." Arkansas v. Sanders, supra, 99 S.Ct. at 2590.
Nevertheless, the Supreme Court has "specifically established and well-delineated" a few exceptions, Coolidge v. New Hampshire, supra, 403 U.S. at 455, 91 S.Ct. at 2032, quoting Katz v. United States, supra, 389 U.S. at 357, 88 S.Ct. at 514, which are "jealously and carefully drawn." Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958). These exceptions have been established "where it was concluded that the public interest required some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search." Arkansas v. Sanders, supra, 99 S.Ct. at 2590. The burden is upon the party who seeks to establish the constitutionality of a warrantless search to prove that the search falls within one of the recognized exceptions. Coolidge v. New Hampshire, supra, 403 U.S. at 455, 91 S.Ct. at 2032, quoting United States v. Jeffers, supra, 342 U.S. at 51, 72 S.Ct. at 95.
The government, in the case at bar, in attempting to meet that burden, seeks to justify the warrantless search of the briefcase on three grounds, (A) as incident to a lawful arrest; (B) because of exigent circumstances; and (C) as an inventory of its contents.[13] We deal with each of these grounds in turn.

A. Search Incident to a Valid Arrest

When a police officer is making a lawful arrest, courts have recognized that there is a danger that the arrestee may use a weapon to resist that arrest thereby endangering the officer and frustrating the arrest itself, or the arrestee may seek to conceal or destroy evidence. E. g., United States v. Robinson, 414 U.S. 218, 234, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973); Chimel v. California, supra, 395 U.S. at 763, 89 S.Ct. at 2040; Nixon v. United States, D.C. App., 402 A.2d 816, 821 (1979); Arrington v. United States, D.C.App., 382 A.2d 14, 19 (1978); Punch v. United States, D.C.App., 377 A.2d 1353, 1357 (1977), cert. denied, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); Brooks v. United States, supra at 1304 n. 6. For these reasons, it is constitutionally permissible for the arresting officer "to conduct a prompt, warrantless `search of the arrestee's person and the area "within his immediate control"construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.'" United States v. Chadwick, supra, 433 U.S. at 14, 97 S.Ct. at 2485, quoting Chimel v. California, supra, 395 U.S. at 763, 89 S.Ct. at 2040.
The basis for this exceptionsafety or destruction of evidenceserves to define the extent of the intrusion constitutionally permissible. Consequently, only those warrantless searches made contemporaneously with the arrest fall within the exception since the underlying justification for the search would no longer exist if the search were remote in time or place from the arrest. Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). The Supreme Court in United States v. Chadwick, supra, when examining the question of whether a search incident to a lawful arrest allowed law enforcement officials to not only seize a footlocker from *903 the immediate vicinity of the arrestee but also conduct a search of the contents of that footlocker later at their office, found that although the warrantless seizure under the circumstances was justified, once the footlocker was in the "exclusive control" of the officials, the further intrusion into the locker was a violation of the Fourth Amendment absent a search warrant, exigent circumstances or consent from the arrestee. The Court held that "[t]he initial seizure and detention of the footlocker . . . were sufficient to guard against any risk that evidence might be lost. With the footlocker safely immobilized, it was unreasonable to undertake the additional and greater intrusion of a search without a warrant." 433 U.S. at 13, 97 S.Ct. at 2484-2485. Central to this holding was the Court's realization, as we have previously mentioned, that "luggage is a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy." Arkansas v. Sanders, supra, 99 S.Ct. at 2592, citing United States v. Chadwick, supra, 433 U.S. at 13, 97 S.Ct. at 2484. Thus, "[o]nce law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." United States v. Chadwick, supra at 15, 97 S.Ct. at 2485.[14]Accord, Preston v. United States, supra, 376 U.S. at 367, 84 S.Ct. at 883.
From the record in the case sub judice, we cannot say that the briefcase was taken from D.A.V. at the time of his arrest and searched incident thereto. Given the barren record on this point, the government, which seeks the benefit of this exception to the warrant requirement, has not carried its burden of establishing its applicability.

B. Exigent Circumstances

Exigent circumstances is the name given to those circumstances which present the need for an immediate search that "could not brook the delay incident to obtaining a warrant." Brooks v. United States, supra at 1301, quoting Dorman v. United States, 140 U.S.App.D.C. 313, 320, 435 F.2d 385, 392 (1970) (en banc). Therefore, it has been held that "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." Warden v. Hayden, supra, 387 U.S. at 298-99, 87 S.Ct. at 1646 (warrantless search of a house not a violation of the Fourth Amendment when police officer in "hot pursuit" of a suspect and the search can ensure that police had control of all weapons that could be used to effect an escape). "The need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal absent an exigency or emergency." Mincey v. Arizona, 437 U.S. 385, 392, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290 (1978), quoting Wayne v. United States, 115 U.S.App.D.C. 234, 241, 318 F.2d 205, 212 (1963). Further, the exception is justified to prevent the destruction of evidence. Michigan v. Tyler, 436 U.S. 499, 510, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486 (1978) (a burning building supplied the exigency to enter to put out the flames and to search for continuing dangers and evidence of arson before its destruction).[15] Nevertheless, the scope of the search under this exception to the warrant requirement "must be `strictly circumscribed by the exigencies which justify its initiation.'" Mincey *904 v. Arizona, supra, 98 S.Ct. at 2414, quoting Terry v. Ohio, 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968).
The government contends that exigencies later developed that necessitated the search of the briefcase in the security office. We cannot find from this record the exceptional circumstances needed to invoke this exception to the warrant requirement. There is no evidence of record that the officer, once at the security office, feared possible danger to himself or others or that evidence might in fact be destroyed if the briefcase remained closed. Further, there is no showing in the record of (1) what the officer thought he would find in the briefcase, (2) why he thought what he was looking for would be in the briefcase, or (3) how its contents would have helped the other officers in their pursuit of appellant. We only have the allegation, made for the first time on appeal, that there may have been some identification in the briefcase that could have helped the officers apprehend appellant. Assuming the officer had testified that he opened the briefcase to elicit the suspect's name and address, we cannot say that information would have helped the other officers during the chase.[16] His name and address would only have been helpful if they had lost the suspect and needed the additional information to establish his whereabouts. For this purpose, a slight delay in order to obtain a warrant would have been of little consequence. Thus, we find no proper "showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948). Under the circumstances of this case and the record before us, we cannot say that the government has borne its burden of establishing the exigent circumstance exception to the warrant requirement.

C. Inventory Search

Inventory searches are not considered criminal searches and thus not linked to probable cause or the warrant requirement. South Dakota v. Opperman, 428 U.S. 364, 370 n. 5, 96 S.Ct. 3092, 2097 n. 5, 49 L.Ed.2d 1000 (1976).[17] Therefore to safeguard the public against unreasonable intrusions, the Court in Opperman mandated that inventories be conducted according to established police procedure "a factor tending to ensure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function" of such a search. Id. at 375, 96 S.Ct. at 3100, citing Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The Supreme Court further noted in Opperman that an inventory search pursuant to police procedures is designed to meet three distinct needs: (1) "the protection of the owner's property while it remains in police custody," (2) "the protection of the police against claims or disputes over lost or stolen property," and (3) "the protection of the police from potential danger." Id., 428 U.S. at 369, 93 S.Ct. at 3097; Schwasta v. United States, D.C. App., 392 A.2d 1071, 1073-74 (1978).
Further, we have repeatedly held, as the Supreme Court implicitly found in Opperman, that a proper inventory search can only be conducted after the police lawfully have acquired custody of the property. E. g., id. at 1074; Arrington v. United States, supra at 18. Once the property is seized the police have "a duty to keep a record of the property that they [have] impounded so that it [can] be returned to the suspect or to its owner in due course." Cotton v. United States, 371 F.2d 385, 392 (9th Cir. 1967).
Consequently, when the police are involved in the routine administrative caretaking of property coming into their possession lawfully, it is reasonable for purposes of the Fourth Amendment to inventory *905 its contents pursuant to standard police procedure. South Dakota v. Opperman, supra; Schwasta v. United States, supra at 1074.[18] If the record reveals that the search is an attempt to merely explore the property for evidence, then it cannot be justified as an inventory search. Pigford v. United States, D.C.App., 273 A.2d 837, 840 (1971); United States v. Pannell, D.C.App., 256 A.2d 925, 927 (1969).
From the record, as stated before, we cannot say that the officer had the briefcase in his possession lawfully, since there is no evidence that delineates the precise circumstances of the seizure. Assuming that the briefcase was seized lawfully, there is also no evidence that any standard police procedure was followed. We can come to only one conclusion, that the government now wishes to uphold an investigatory search on the pretext of an inventory.
In sum, we conclude that none of the "specifically established and well-delineated exceptions" to the warrant requirement, relied upon by the government, applies, and that therefore the security officer ignored "the procedure of antecedent justification before a magistrate that is central to the Fourth Amendment." Osborn v. United States, 385 U.S. 323, 330, 87 S.Ct. 429, 433, 17 L.Ed.2d 394 (1966), quoting Ohio ex rel. Eaton v. Price, 364 U.S. 263, 272, 80 S.Ct. 1463, 1468, 4 L.Ed.2d 1708 (1960) (separate opinion).
Reversed.
GALLAGHER, Associate Judge, dissenting:
Appellant and a companion were observed by a Special Police officer at a shirt display in a Woodward and Lothrop Department Store. The officer recognized both juveniles and saw appellant, who was carrying a briefcase, pick up a shirt, bend down and stand up without it in his hands. She followed the youths into an elevator, at which point appellant handed the briefcase to his companion. When they left the elevator, appellant and his companion split, with appellant darting toward an escalator. The officer asked another security officer to arrest the companion with the briefcase and take him to the security office. She then pursued appellant. He was caught and later also brought to the security office. By that time, the briefcase had been opened there by an officer and the shirt was recovered.
The principal contentions appear to be that appellant had a legitimate expectation of privacy in respect to the briefcase which he had handed to his companion because it belonged to him;[1] and that the briefcase was searched in violation of his Fourth Amendment rights.
It strikes me as a routine search incident to an arrest for which there was probable cause.[2] Though the majority opinion quotes the trial testimony for the defense witnesses at some length, the trial judge expressly discredited their testimony, as the majority opinion itself acknowledges.
The Supreme Court has stated:
[I]t is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. . . . There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control" construing that phrase to mean the area *906 from within which he might gain possession of a weapon or destructible evidence. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969).
In a recent case discussing the law on searches incident to arrest, the Seventh Circuit stated:
[T]he standard emergent from a review of the seminal cases defining the scope of warrantless searches incident to arrest is that, to be found reasonable and therefore exempt from the warrant requirement, the search must be conducted substantially contemporaneous with the arrest and be spatially limited to the person of the arrestee, the possessions immediately associated with the person of the arrestee, and the area within the arrestee's immediate control. United States v. Garcia, 605 F.2d 349, 353 (7th Cir. 1979) (luggage carried by arrestee).
I take it to be without question that, assuming jewelry rather than a shirt had been taken, an arresting officer could have searched upon arrest a wallet or handbag of an arrestee under these circumstances without a warrant. I see no sensible reason why the briefcase being carried here by the companion was not susceptible to a warrantless search as well.[3] It was conducted in the store security office, away from the view of customers,[4] and on this record, I view the search as having been "substantially contemporaneous with the arrest." Id. I would affirm.
Before NEWMAN,[*], Chief Judge, KELLY, KERN, GALLAGHER,[*] NEBEKER, HARRIS, MACK, FERREN and PRYOR, Associate Judges, and PAIR,[*] Associate Judge, Retired.

ORDER
PER CURIAM.
On consideration of the petition of appellee District of Columbia for rehearing or, in the alternative, for rehearing en banc, the memorandum of amicus curiae, and appellant's response to the aforesaid petition, it is
ORDERED by the merits division that appellee's petition for rehearing is denied; and it appearing that a majority of the judges of this Court has voted to deny appellee's petition for rehearing en banc, it is
FURTHER ORDERED that appellee's en banc petition is denied.
GALLAGHER, Associate Judge, would grant appellee's petition for rehearing.
GALLAGHER, NEBEKER, and HARRIS, Associate Judges, would grant appellee's petition for rehearing en banc (see attached separate statement).
Statement of NEBEKER, Associate Judge, with whom GALLAGHER and HARRIS, Associate Judges, concur, as to why he voted to grant rehearing en banc.
The holding of the majority in this case, which in my view is incorrect, extends United *907 States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), from the footlocker possessed by federal agents in the federal building in Boston to the briefcase seized from the hands of appellant's companion after appellant fled. The practical result of this holding will be that those engaged in deterring and apprehending shoplifters will follow the alternative of searching the suspects' packages in public and immediately upon arrest. (The majority opinion admits such a search is permissible. See at 902.) The only other alternative would be to hold the suspect while the special policeman seeks out a law enforcement officer (who is, to the exclusion of special police officers, authorized to apply for search warrants under D.C.Code 1973, § 23-521) and to await its issuance.[1] In instances where a warrant is applied for it is inescapable that the suspect would have to be detained for a long period of time. Either alternative is indeed an unfortunate result of the majority holding when one realizes that there are instances in which a suspect is released immediately when it is found that he is not in possession of stolen merchandise.
It also seems to me that Judge Gallagher's position, in dissent, is correct for the additional reason that the special police officer in this case had probable cause (the offense having been committed in his presence) to arrest appellant's companion for receiving stolen property. Such an arrest without a warrant is permissible under D.C. Code 1973, § 23-581. I do not understand the majority to hold that the right to search the briefcase for the stolen property, which appellant's companion had received in the presence of the officer, is in any way subordinated by appellant's Fourth Amendment interest in the briefcase he gave to his companion before he fled. It is because I deem this holding of the majority to be important to the administration of justice, as well as erroneous, that I would rehear this case en banc.
The majority opinion is flawed for another basic reason. It relies on testimony given at trialafter the motion to suppress had been denied. The court, like the trial court, is bound by the record of the pretrial hearing. To consider trial testimony on the suppression issue violates D.C.Code 1973, § 23-104(a)(2) which requires:
A motion for return of seized property or to suppress evidence shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion.
Consistent with this provision we held in Jenkins v. United States, D.C.App., 284 A.2d 460 (1971), that once a pretrial motion to suppress is decided it becomes law of the case.[2] Therefore, neither the trial court nor this court is free to reconsider denial of the motion on facts not presented at the motion hearing. Moreover, I am at a loss to understand how reliance could be placed on such testimony when it was expressly disbelieved by the trial judge.
The majority's holding is not required by Chadwick, supra. It is not warranted by reason and it cannot be supported by what is in effect discredited extra-record testimony.
I emphasize that the foregoing views deal with the only holding of the court in this case. The discussion in the majority opinion respecting appellant's legitimate expectation of privacy as to the briefcase is nothing but gratuitous comment for it resolves no issue in this case. Judge Gallagher treated that discussion as such for he ignored it in his dissent.
Unlike Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1977), where the prosecutor challenged standing to complain of the search, everyone in this casethe prosecutor, the appellant, the trial judge, and counsel in their briefs herehave assumed that appellant had the requisite interest *908 to challenge the search. Rakas, supra at 130 n. 1, 99 S.Ct. at 423 n. 1. I therefore, do not find in this case any need to address that abstract question. The comments of the majority respecting their understanding of the law as a result of Rakas do not constitute a holding of the court. Accordingly, I do not deem the petition for rehearing en banc to present any question for consideration by the full court on that subject.
NOTES
[*] Denotes merits division.
[1] The shirt in question was apparently reshelved and sold prior to trial and thus not introduced as tangible evidence at trial. Consequently, the testimony of its discovery in the briefcase was what was sought to be suppressed.
[2] Except for this testimony, which appears to be hearsay, there is no evidence that Officer Potts was in the security office when the briefcase was opened and searched.
[3] We do not address this issue since we reverse on other grounds.
[4] We quote extensively from the transcript to highlight the inadequacy of the record concerning the facts pertinent to the Fourth Amendment issue.
[5] D.A.V. is the only witness who testified to a possible third accomplice in the incident.
[6] In this regard, it is important to note that the only area in which the testimony of Officers Smith and Townsend is in conflict is not one germane to the Fourth Amendment issue. Specifically, Smith in no way contradicts or diminishes the testimony of Townsend (and D.A.V.) on the issue of the seizure and subsequent search of the briefcase. Indeed, since Smith was not present at the seizure, she could give no relevant testimony concerning it.
[7] The Court explicitly rejected the "target" theory already seemingly rejected in Alderman v. United States, supra, which states that any criminal defendant at whom a search was directed would have standing to contest the legality of that search. It was only under this "target" theory that courts would be relieved of inquiring whether the challenged search or seizure violated the Fourth Amendment rights of this particular defendant. Rakas v. Illinois, supra, 99 S.Ct. at 426-28. Thus, the Court in rejecting this approach mandated, in effect, that courts make this inquiry.

The Court expressed no opinion on the "automatic" standing rule which allows a defendant to assert the Fourth Amendment rights of another "where the same possession needed to establish standing is an essential element of the offense charged." Id. at 426 & 426 n. 4.
[8] We found support for this assessment of the impact of Rakas in the Court's own analysis of the effect this decision would have had on already decided cases: "[W]e can think of no decided cases from this Court that would have come out differently." Id. at 428.
[9] We find nothing in the record to indicate anything more than a mere temporary relinquishment of possession and certainly nothing tantamount to an abandonment. See United States v. Speed, D.C.App., 388 A.2d 892, 893 (1978); United States v. Boswell, D.C.App., 347 A.2d 270, 273-75 (1975); Smith v. United States, D.C.App., 292 A.2d 150, 151 (1972).
[10] See pp. 902-903 infra.
[11] Some courts have found no distinction in the degree of expectation of privacy associated with an unlocked but closed as opposed to a locked container. State v. Daniel, 589 P.2d 408 (Alaska 1979). See United States v. Hill, 458 F.Supp. 31 (D.D.C.1978).
[12] We have repeatedly requested that the trial court make findings of fact. See Cahill v. Cahill, D.C.App., 402 A.2d 410 (1979); Don't Tear It Down, Inc. v. District of Columbia, D.C.App., 395 A.2d 388, 391 (1978); Moore v. Moore, D.C.App., 391 A.2d 755, 762, 770 (1978); Arrington v. United States, D.C.App., 382 A.2d 14, 18 n. 5 (1978). This case presents the classic example of why we require such findings on the record. A more complete record encompassing specific findings of fact assist both the trial court and the appellate court in more properly performing their respective judicial functions. See Pierce v. United States, D.C. App., 402 A.2d 1237 (1979); Johnson v. United States, D.C.App., 398 A.2d 354, 362 (1979); Monroe v. United States, D.C.App., 389 A.2d 811, 821 (1978).
[13] The government does not seek to establish that D.A.V. abandoned the briefcase during the chase.
[14] For an historical development of the search incident to arrest exception to the warrant requirement, see Chimel v. California, supra.
[15] The search incident to arrest exception and the exigent circumstances exception are at times entertwined. In Schmerber v. California, supra, 384 U.S. at 770, 86 S.Ct. at 1835, the Court upheld a warrantless taking of blood to prevent the destruction of evidence of drunkenness, as being incident to arrest, given the special circumstances that the percentage of alcohol in the blood diminishes as the body functions to eliminate it. Schmerber is also cited in Mincey v. Arizona, supra, 99 S.Ct. at 2414, as a search to prevent the imminent destruction of evidence within the exigencies exception.
[16] Officer Potts admittedly could have identified the fleeing suspect.
[17] South Dakota v. Opperman, supra, like most cases addressing the issue of the lawfulness of an inventory search, arose within the factual setting of police impoundment of an automobile.
[18] Subsequent to the Chadwick decision, courts have held that certain containers found in automobiles during an inventory search cannot be opened without a warrant as incident to the inventory search. United States v. Hill, supra at 36-37 (court suggests the alternative of sealing and removing the defendant's flight bag); State v. Daniel, supra at 418 (court finds it sufficient to merely list the item as a closed or locked container and if necessary to remove it for safekeeping).
[1] No issue of abandonment was raised in the trial court.
[2] The trial court expressly found probable cause for the arrests.
[3] I view the facts in United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (locked footlocker in trunk of parked automobile; search remote in time and place from arrest) and Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) (unlocked suitcase in trunk of taxi stopped and searched for contraband) as being distinguishable in principle. As a matter of fact, interesting enough, in the more recent opinion in Sanders the court expressly did not reach the question more nearly involved here, saying:

Nor do we consider the constitutionality of searches of luggage incident to the arrest of its possessor. See, e. g., United States v. Robinson, 414 U.S. 218, 94 S.Ct. 457, 38 L.Ed.2d 427 (1973). The State has not argued that respondent's suitcase was searched incident to his arrest, and it appears that the bag was not within his "immediate control" at the time of the search. 99 S.Ct. at 2593, n. 11.
United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (search of cigarette package in coat pocket at time of arrest) is closer to the situation here since the arrestee had immediate access to the briefcase.
[4] In my view, it is in the public interest in a department store to proceed immediately to the available security office with a person arrested for shoplifting and there conduct any search or interrogation warranted under the circumstances, rather than doing so in the store proper so as to avoid the attendant risks to the shoppers and needless confusion.
[1] It appears that special police officers have the same power of arrest in instances where a warrant is not required. See D.C.Code 1973, § 23-582. Section 23-521 would seem to preclude special police applications for warrants.
[2] Accord, United States v. Allen, D.C.App., 337 A.2d 512, 513 (1975); Smith v. United States, D.C.App., 295 A.2d 64, 65 n. 2 (1972).