**UNITED STATES of America,
Appellant,**

v.

**Rick Thomas BLOOMFIELD, Appellee.**

**No. 78–1753.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 8, 1979.

Decided March 1, 1979.

Ann D. Montgomery, Asst. U. S. Atty., Minneapolis, Minn. (argued), Andrew W. Danielson, U. S. Atty., and Thomas Wieser, Legal Intern, on brief, for appellant.

Richard G. Spicer of Lewis & Spicer, Minneapolis, Minn., argued, for appellee; Jerome H. Lewis, Minneapolis, Minn., on brief.

Before STEPHENSON and McMILLIAN, Circuit Judges, and FILIPPINE *, District Judge.

McMILLIAN, Circuit Judge.

The government appeals the district court's order suppressing evidence seized from a knapsack belonging to appellant, Rick Thomas Bloomfield, during a routine inventory search of the personal belongings in appellant's automobile. We find that the police officers exceeded the permissible scope of a routine inventory search and affirm the order of the district court.[1]

On May 29, 1978, at approximately 1:00 p. m., police were summoned to appellant's car which was blocking traffic. Appellant was at the wheel, unconscious and suffering from seizures. Bloomfield was transported by ambulance to a hospital, and the officers ordered a tow truck to remove his automobile from the public highway. Before the tow truck arrived, the officers conducted a routine inventory search of the articles in the automobile. In so doing they opened a knapsack which was zipper-closed and tied with string. Inside they found 10,360 dosage units of lysergic acid diethylamide (LSD), 23 grams of phencyclidine (PCP) and $1,300.00 cash. The narcotics formed the basis of the indictment against appellant for possession of controlled substances with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The district court granted appellant's motion to suppress the evidence in the knapsack on the ground that itemizing the contents of the knapsack, instead of storing the bag as a unit, exceeded the scope of an inventory search.[2] The government appeals pursuant to 18 U.S.C. § 3731.

We note initially that routine inventory searches do not require a warrant. *United States v. Chadwick,* 433 U.S. 1, 10 n.5, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)[3];

---

* The Honorable Edward L. Filippine, District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Donald D. Alsop, District Judge for the District of Minnesota.

2. Although we agree with the conclusion of the district court, we do not find the cases relied upon by the court to be completely apropos to the issue. The district court stated that it felt compelled to suppress the evidence because of three recent decisions from this court: *United States v. Stevie,* 582 F.2d 1175 (8th Cir. 1978) (en banc), *petition for certiorari filed,* No. 78–971 (Dec. 15, 1978); *United States v. Schleis,* 582 F.2d 1166 (8th Cir. 1978) (en banc); and *United States v. Haley,* 581 F.2d 723 (8th Cir. 1978). In these three cases the appellants therein sought suppression of evidence found inside briefcases or suitcases which were within their automobiles or on their person when police arrived. In *Stevie* the police had been investigating appellants for narcotics violations, and stopped and searched their car on the highway because it became impractical to continue following them. In *Schleis* and *Haley* the appellants were discovered by police in intoxicated or unconscious conditions. In all three cases, appellants contested the warrantless search of their suitcases or briefcases. Our analysis was the same in every case: based on *Chadwick* we first found the search to be improper without a warrant. We then proceeded to determine if the police could justify their warrantless search under one of the exceptions to the warrant requirement. Only in *Schleis* did the government attempt to invoke the inventory search exception to the warrant requirement, and there we held that the record did not support such a claim and, in any event, it was not necessary to open the briefcase since it could have been inventoried as a unit.

Therefore, while the above three cases present the same pattern as the case at bar, i. e., the warrantless search of a container in appellant's automobile and inquiry into which, if any, exceptions to the warrant requirement apply; beyond the slight reference to *Schleis,* these cases did not address the inventory search as an exception to the warrant requirement.

3. Because *Chadwick* has been relied upon by both parties we believe it important to delineate what we perceive as its relevance, or irrelevance, to the case at hand. In *Chadwick,* the Supreme Court held that police officers must have a search warrant, or meet one of the requirements for an exception to the warrant requirement, before they can search an arrestee's luggage. The underlying question was whether the luggage is within the fourth amendment's protections. To answer this question the court focused on the privacy interests in luggage. After it found that there was a

*South Dakota v. Opperman,* 428 U.S. 364, 370 n.5, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1975); *United States v. Collins,* 549 F.2d 557, 559 (8th Cir. 1977). As the Supreme Court has explained, the concept of probable cause, which underlies the warrant requirement, is "unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations."[4] *South Dakota v. Opperman, supra,* 428 U.S. at 370 n.5, 96 S.Ct. at 3097. Therefore it is not relevant that the officers did not obtain a warrant to search Bloomfield's knapsack.[5] Furthermore, because the warrant requirement is inapplicable to routine inventory searches, it is not necessary that we consider whether the search of appellant's knapsack can be justified under any other of the exceptions to the warrant requirement, such as the automobile exception or exigent circumstances. Indeed, as the parties have precisely stated, the only issue before this court is whether, in an inventory search of an automobile, a knapsack found therein should be inventoried as a unit or opened and itemized.

To answer this question we must ascertain whether the governmental interests in performing an inventory search are better served by itemizing the contents of a container or by storing the container as a unit. The commonly avowed purposes of an inventory search are (1) "the protection of the owner's property while it remains in police custody"; (2) "the protection of the police against claims or disputes over lost or stolen property"; and (3) "the protection of the police from potential danger."[6] *South Dakota v. Opperman, supra,* 428 U.S. at 369, 96 S.Ct. at 3097.

▮ In this instance, because the knapsack was tightly sealed and there was no danger of anything slipping out, the first two purposes are better served if the knapsack is inventoried as a unit. In this way the knapsack, which is locked up as a whole in police headquarters, has never been opened and its contents have never been removed, reshuffled and replaced. To our minds, this would minimize the possibility of loss and the possibility of false claims against police by the owner.

As to the last purpose, however, protecting the police from danger, an argument could be made that by inventorying the contents of the knapsack, the police would more likely become apprised of harmful items within. In determining whether this governmental interest warrants the further

constitutionally protected privacy interest in luggage and thus that a warrant was necessary, the court discussed the several exceptions to the warrant requirement raised by the government, explaining why none of them were applicable. The government never attempted to rely on the inventory search as an exception to the warrant requirement.

In the case at bar, it is not necessary that we address the initial question posed in *Chadwick,* i.e., whether an inventory search is within the fourth amendment and thus whether appellant had as much of a privacy interest in a knapsack as Chadwick did in his luggage, etc. As stated, the law is well-settled that an inventory search is protected by the fourth amendment but because the probable cause concept is inapplicable to routine inventory searches, a warrant is not required. *South Dakota v. Opperman, supra,* 428 U.S. at 370 n. 5, 96 S.Ct. 3092. It is for this reason that we do not dwell on some of the particularities of this case which the parties seem to find relevant, such as the fact appellant's knapsack was zipper-closed and not locked.

4. The parties concede that the police did not suspect appellant of any wrongdoing when they opened his knapsack and thus this inventory search was not a subterfuge for a criminal investigation.

5. When Bloomfield was discovered unconscious in his car by the police, there was a porcelain pipe in his hand. We concede that this information is somewhat relevant to probable cause but the officers did not attempt to use this information to show probable cause in order to obtain a warrant or in order to prove one of the exceptions to the warrant requirement. The government has only attempted to justify this search as a routine inventory search to which, as stated, probable cause is not relevant.

6. Inventory searches have also been justified, in accident cases, on the basis that police were looking for identification and essential medical information. No such claim is made here.

infringement on a citizen's right to privacy that an itemized inventory would impose, we must balance the "governmental and societal interests advanced to justify such intrusions against the constitutionally protected interest of the individual citizen in the privacy of his effects". *South Dakota v. Opperman, supra,* 428 U.S. at 378, 96 S.Ct. at 3101 (Powell, J., concurring); *Cady v. Dombrowski,* 413 U.S. 433, 447–48, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Terry v. Ohio,* 392 U.S. 1, 20–21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Justice Powell has described the potential for harm to this privacy interest: "[a]s part of their inventory search the police may discover materials such as letters or checkbooks that 'touch upon intimate areas of an individual's personal affairs,' and 'reveal much about a person's activities, associations and beliefs'." *South Dakota v. Opperman, supra,* 428 U.S. at 380 n.7, 96 S.Ct. at 3102 (1975) (Powell, J., concurring).

It seems to us, in the case at hand, that comparing this right to privacy with the governmental interest at stake, the governmental interest is slight. It is simply not reasonable to assume that, given the circumstances in which this knapsack was found, storing it as a unit at the police station, without specific knowledge of its contents, can pose a danger to police. As Justice Powell acknowledged in his concurring opinion in *South Dakota v. Opperman, supra,* 428 U.S. at 378, 96 S.Ct. 3092, while the danger associated with impounding unsearched automobiles can not be discounted, it is rare. In addition, there are alternative ways of detecting such danger, such as use of dogs trained to locate explosives. Because there is no indication in this situation that appellant's knapsack posed any danger to police, we do not believe that opening and inventorying its contents, rather than storing the knapsack as a unit can be justified on the basis of protecting police.

█ In conclusion, we note that our holding that the knapsack should have been inventoried as a unit rather than opened and itemized is confined to the facts before us. If a container which is to be invento-

ried is not securely closed so that the articles within could possibly fall out, it may be wiser for police to itemize the articles. *See United States v. Neumann,* 585 F.2d 355 (8th Cir. 1978). And, if police have some reason to believe a container which is to be inventoried holds instrumentalities which could be dangerous even when sitting idly in the police locker, the police may, and should, inventory the contents of the container.

For the foregoing reasons, the order of the district court suppressing the evidence is affirmed.