**UNITED STATES of America,**
**Plaintiff,**

v.

**Diana Courteny DUONG and Thanh–Mai Thi Truong, Defendants.**

No. C1–04–050.

United States District Court,
D. North Dakota,
Southwestern Division.

Sept. 24, 2004.

Scott J. Schneider, Bismarck, ND, for US.

Kent M. Morrow, Severin & Ringsak, Bismarck, ND, Benjamin C. Pulkrabek, Pulkrabek Law Firm, Mandan, ND, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO SUPPRESS

HOVLAND, Chief Judge.

Before the Court is Defendant Diana Courteny Duong's Motion to Suppress Ev-

idence filed on August 10, 2004. The motion to suppress relates to evidence seized by law enforcement officers on February 11, 2004. Co–Defendant Thanh–Mai Thi Truong has joined in Duong's motion. On August 20, 2004, the Government filed a response resisting the motion to suppress. An evidentiary hearing was held on September 3, 2004, in Bismarck, North Dakota. For the reasons outlined below, the motion to suppress is denied.

## I. BACKGROUND

On February 11, 2004, North Dakota Highway Patrolman Will Vance was driving east bound on I–94 between Belfield and Medora, North Dakota. Winter weather conditions had caused the interstate highway in that area to be closed the previous evening. The interstate was still closed when Trooper Vance came on duty that morning. At approximately 8:50 a.m. Trooper Vance came across a 2004 Mitsubishi Endeavor, with Washington license plates, lying in the south ditch of the east bound lane of I–94. The SUV was lying on its side at a location approximately 40 feet from the highway. The vehicle appeared to have slid off the road at a slight curve in the highway and made a three-quarter roll. *See* Exhibit No. 3. Trooper Vance described the interstate as "extremely icy." There was no one at the accident site when the trooper arrived on location. Trooper Vance said a license check revealed that the owner of the vehicle was "PT Holding Company." He said the SUV appeared to be a rental vehicle.

Trooper Vance immediately contacted local law enforcement agencies to determine whether any accidents had been reported. No agency had received any such report. Trooper Vance then requested that State Radio contact "East End Towing" in Dickinson, North Dakota, to have the vehicle impounded. The dispatchers at State Radio informed Trooper Vance that East End Towing had already received a call from a person who had requested the vehicle be towed. The person identified herself as Mai Truong. When the tow truck arrived at the scene, the East End Towing employee explained that he was supposed to meet this person (the alleged owner/driver) at Exit 32 to obtain the keys to the vehicle. However, no one showed up to make the exchange. The tow truck was unable to reach the SUV vehicle in the ditch with the equipment it had so another East End Towing employee was called to bring additional towing equipment to the accident scene.

Trooper Vance's notes reveal that he decided to leave the vehicle at that time and conduct an inventory search later that same day. However, shortly after he left the scene, Trooper Vance met the other East End Towing employee on I–94 and, thereafter, decided to return to the scene of the rollover.

The SUV vehicle was turned upright by the towing company shortly after 10:30 a.m. At that time, Trooper Vance checked the glove box of the vehicle for any documentation to identify the owner. The trooper was only able to locate a card from Budget Rent–A–Car which revealed no information other than a telephone number for the rental agency. Trooper Vance then looked in the back seat of the SUV and noticed the back seats were folded down. There were several large, black duffel bags and a suitcase located in the back seat area. Neither the duffel bags nor the suitcase had any identification tags. Trooper Vance decided to conduct a brief inventory search at that time. The trooper testified that he thought the duffel bags contained video equipment. More important, Trooper Vance consistently testified at the suppression hearing that he did not have any suspicion the duffel bags contained contraband. The trooper removed one of the large duffel bags, opened

it, and found that it contained numerous sealed bags of marijuana. *See* Exhibit No. 5. Trooper Vance then removed the remaining duffel bags all of which contained several hundred pounds of marijuana.

Trooper Vance immediately contacted State Radio to request assistance. Deputy Sheriff Pat Rummel arrived at the scene at approximately 10:52 a.m. Deputy Rummel helped carry the duffel bags to his patrol car because they were too large to fit in Trooper Vance's vehicle. The SUV was then towed away at approximately 11:30 a.m. and taken to East End Towing in Dickinson, North Dakota.

Trooper Vance obtained a search warrant on February 12, 2004. Law enforcement officers conducted a complete search of the vehicle later that day. Although several calls went back and forth between East End Towing personnel and the owner/driver of the vehicle, no one ever showed up to claim an ownership interest in the vehicle on February 11, 2004, or at anytime thereafter.

On June 16, 2004, defendants Duong and Truong were charged in federal court with the following: (1) Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance and (2) Possession with Intent to Distribute a Controlled Substance.

## II. *LEGAL DISCUSSION*

### A. *STANDING*

"The Fourth Amendment protects 'against unreasonable searches and seizures,' but its protections are personal and cannot be asserted by persons lacking a 'legitimate expectation of privacy' in the place searched." *United States v. Kuenstler*, 325 F.3d 1015, 1020 (8th Cir.2003) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). An individual asserting Fourth Amendment rights "must demonstrate that he personally has an expectation of privacy in

the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched, he has no standing to claim that they were searched or seized illegally." *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir.1994).

It is well-established that the Fourth Amendment rights are personal and may not be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 138, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Morales*, 737 F.2d 761, 763 (8th Cir. 1984). If a defendant fails to prove a close connection to the relevant places or objects searched, she has no standing to claim the search was illegal. Further, the defendant moving to suppress certain evidence has the burden of proving a reasonable expectation of privacy in the area searched. *Rakas*, 439 U.S. 128, 130–131, 99 S.Ct. 421, 58 L.Ed.2d 387. There are a number of factors that are relevant to the determination of standing. Those factors include ownership; possession or control of the area searched or items seized; historical use of the property or item; ability to regulate access; the existence or non-existence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case; and the totality of the circumstances surrounding the search. *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir.1994) (citing *United States v. Sanchez*, 943 F.2d 110, 113 (1st Cir.1991)).

In this case, defendant Diana Duong has failed to demonstrate any legitimate expectation of privacy in the SUV motor vehicle or the items seized. Counsel for Duong pointed only to the fact that some of the items found in the SUV were personal items that a female would carry while trav-

eling. Duong has not claimed any ownership interest in the vehicle, nor acknowledged that she was the driver or even a passenger in the vehicle. None of the above-identified relevant factors to be considered in determining standing weigh in her favor. The Court concludes that Duong has failed to sustain her burden of proof and has no standing to challenge the search of the 2004 Mitsubishi Endeavor in question.

■ With respect to defendant Thanh–Mai Thi Truong, her name was provided to the car rental agency and to East End Towing as the name of the person allegedly having an ownership interest in the SUV vehicle and/or as the driver of the vehicle. Truong has never acknowledged having an ownership interest in the SUV or the duffel bags. The Court believes that Truong's standing to challenge the search and seizure is extremely weak at best under the facts presented. Nevertheless, the evidence arguably establishes an ownership interest sufficient to satisfy the standing requirement and to challenge the search of the vehicle.

### B. *INVENTORY SEARCH*

■ The Fourth Amendment secures the persons, houses, papers, and effects of the people against unreasonable searches and seizures by the government. The general rule is that the government must secure a warrant before conducting a search. *United States v. Alberts*, 721 F.2d 636, 638 (8th Cir.1983). However, "[l]aw enforcement may search a lawfully impounded vehicle to compile an inventory list of the vehicle's contents without violating the Fourth Amendment." *United States v. Rowland*, 341 F.3d 774, 779 (8th Cir.2003) (citing *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)). These searches can be conducted without a search warrant or probable cause. *Rowland*, 341 F.3d 774, 779.

The inventory search exception to the warrant requirement was created because police are performing an "administrative or caretaking function rather than a criminal investigatory function when they impound an automobile." *United States v. Marshall*, 986 F.2d 1171, 1174 (8th Cir.1993). Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).

The relevant inquiry is whether, under the totality of the circumstances, the inventory search was reasonable. Inventory searches will be considered reasonable if "conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion." *United States v. Marshall*, 986 F.2d 1171, 1174 (8th Cir.1993) (citing *Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Bertine*, 479 U.S. 367, 376, 107 S.Ct. 738, 93 L.Ed.2d 739; *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990)).

### 1. *THE IMPOUNDMENT*

It is well-established that law enforcement officers can exercise discretion when deciding whether to impound a vehicle "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). "Some degree of 'standardized criteria' or 'established routine' must regulate such police actions, which may be conducted without the safeguards of a warrant or probable cause, to ensure that impoundments and inventory searches are not merely 'a ruse for general rummaging in order to discover incrimina-

ting evidence.' " *United States v. Petty,* 367 F.3d 1009, 1012 (8th Cir.2004). However, the decision to impound or inventory does not have to be done in a "totally mechanical fashion." *Id.* An impoundment policy can allow " 'some latitude' and 'exercise of judgment' by a police officer when those decisions are based on concerns related to the purposes of an impoundment." *Id.* (citing *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990)). Because it is not possible for police departments to have guidelines for every impoundment situation, the absence of such mechanical rules will not necessarily make the impoundment unconstitutional.

■ During the suppression hearing, the Government introduced an exhibit entitled "North Dakota Highway Patrol Policy Manual." A section of that Manual is entitled "Impoundment of Property and Evidence Control." *See* Exhibit No. 2. The stated purpose of that section is "[t]o establish guidelines for impounding and releasing property and maintaining the integrity of the evidentiary chain of custody." Section "L" of the Manual pertains to "Abandoned Motor Vehicles" and contains the following provisions:

1. Officers finding unattended motor vehicles on a highway right of way shall immediately start action to ascertain ownership through State Radio, by telephone, or in person; and if the vehicle is determined to be stolen, shall take custody immediately.

2. If the officer is unable to locate the owner of the motor vehicle and the vehicle has not been reported as stolen and is not in violation of section 24–03–23 NDCC and it has been unattended for a period of 48 hours *or constitutes a hazard,* the vehicle will be considered abandoned and will be impounded and moved to an authorized area for safekeeping.

(emphasis added).

The testimony of Trooper Vance reveals that he attempted to follow these provisions of the Highway Patrol Policy Manual. He immediately contacted several local agencies through State Radio to determine whether any accidents had been reported. *See* N.D. Cent.Code § 39–08–09 (requiring drivers to report accidents resulting in over one thousand dollars worth of damage to state authorities). Trooper Vance was unable to locate the owner/driver of the vehicle. In Trooper Vance's opinion, the vehicle constituted a "hazard" because of its location relative to the interstate highway. In his experience, other drivers have a tendency to help stranded vehicles in the winter. Due to the inclement weather, Trooper Vance believed that it would be dangerous to leave the vehicle in the ditch because other drivers may try to stop on the icy interstate highway to lend assistance. The trooper reasonably believed the vehicle constituted a "hazard" and could create additional problems as a result of the icy conditions that existed at the time. Under North Dakota Highway Patrol policies and procedures, vehicles are to be towed when they constitute a "hazard."

The United States Supreme Court addressed a similar situation in *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). In *Cady,* the Supreme Court reviewed a search of the trunk of a Ford vehicle that was disabled as the result of an accident. The police decided to have the vehicle towed to a private garage because the occupant was intoxicated and because the vehicle was a nuisance along the side of the highway. A search of the vehicle was conducted the next day. The Supreme Court allowed the search stating "[t]hese officers in a rural

area were simply reacting to the effect of an accident—one of the recurring practical situations that results from the operation of motor vehicles and with which local police officers must deal every day." 413 U.S. 433, 446, 93 S.Ct. 2523, 37 L.Ed.2d 706. The Supreme Court also said that the vehicle in question was like an "obviously abandoned vehicle, it represented a nuisance, and [there] is no suggestion in the record that the officers' action in exercising control over it by having it towed away was unwarranted either in terms of state law or sound police procedure." 413 U.S. 433, 447, 93 S.Ct. 2523, 37 L.Ed.2d 706. The same circumstances exist in the present case.

Following North Dakota Highway Patrol procedure, Trooper Vance had the SUV vehicle impounded. The decision to impound was not made based on any suspicion of criminal activity. To the contrary, Trooper Vance had not even entered the vehicle when he made the decision to call East End Towing and have the vehicle recovered from the interstate and impounded. He impounded the vehicle because it had been left unoccupied after an accident and constituted a hazard, nothing more. The Court finds that the North Dakota Highway Patrol Policy Manual provides sufficient "standardized procedures" for impounding vehicles so that Trooper Vance's decision to impound the SUV was reasonable under the circumstances.

### 2. THE SEARCH

■■■ "A legitimate seizure, however, does not automatically justify an unlimited search of the automobile." *United States v. Wilson,* 636 F.2d 1161, 1163 (8th Cir. 1980). The scope of the inventory search that follows must also comport with the reasonableness requirement of the Fourth Amendment. "When the police follow standardized inventory procedures that impact all impounded vehicles in a similar manner and sufficiently regulate the discretion of the officers conducting the search, the reasonableness requirement of the Fourth Amendment is satisfied." *United States v. Marshall,* 986 F.2d 1171, 1176 (8th Cir.1993). Officers are allowed to "keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." *Id.*

■■■ The North Dakota Highway Patrol Policy Manual provides that "[o]fficers will conduct a detailed inspection and inventory of all impounded vehicles." *See* Exhibit No. 1, ¶ (E)(2). Trooper Vance testified that it was, and is, his common practice to open containers when conducting inventory searches. He does this to protect himself, the Highway Patrol, and the towing company. The four duffel bags in question were each approximately 4½ feet long. Trooper Vance said duffel bags of that size could contain almost anything. Under North Dakota Highway Patrol policy, the individual officer is accountable for all inventoried property. As previously noted, Trooper Vance initially believed the duffel bags contained video equipment. However, the duffel bags were large enough they could have contained hazardous or dangerous materials, money, jewelry, guns, etc. A thorough inventory search was warranted to best safeguard the North Dakota Highway Patrol as well as the towing company.

The Defendants contend that the Eighth Circuit case of *United States v. Bloomfield,* 594 F.2d 1200 (8th Cir.1979) should control. In *Bloomfield,* the Eighth Circuit reviewed an inventory search that involved the opening of sealed knapsacks located inside a vehicle. The Court framed the question for review: "[W]e must ascertain whether the governmental interests in performing an inventory search are better

served by itemizing the contents of a container or by storing the container as a unit." 594 F.2d 1200, 1202. The Court identified the reasons for the inventory search as "(1) the protection of the owner's property while it remains in police custody; (2) the protection of the police against claims or disputes over lost or stolen property, and (3) the protection of the police from potential danger." *Id.* (quoting *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)). Evaluating each of the stated purposes, the Court held the knapsacks should have been inventoried as a unit rather than being opened and itemized.

While *Bloomfield* presents a factually similar case, the legal analysis may be insufficient in light of *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) and its progeny. In *Bertine,* the United States Supreme Court held that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." 479 U.S. 367, 374, 107 S.Ct. 738, 93 L.Ed.2d 739. In 1979, the Supreme Court in *Bloomfield* did not analyze police procedure in reaching its decision. However, this Court is required to do so under the current state of the law. The North Dakota Highway Patrol policy requires a detailed inspection of all impounded vehicles. Trooper Vance said his detailed inspection includes the opening of all containers he encounters in order to generate an inventory. *See United States v. Lowe,* 9 F.3d 43 (8th Cir.1993) (holding that courts may consider oral testimony, in addition to written policy, to prove the existence of a department policy regarding the opening of containers during an inventory search).

The Court finds that Trooper Vance attempted to carry out North Dakota Highway Patrol policy in a reasonable manner and in good faith. Further, the Court finds that Trooper Vance evinced no investigatory motive at the time he initially opened the duffel bag which was sitting unlocked in the back seat of an unclaimed SUV. The Court is satisfied there is no direct *or* indirect evidence of an investigatory motive on the part of Trooper Vance and that finding is critical in this case. The law allows Trooper Vance to keep his eyes open for incriminating evidence while conducting an inventory search and that is precisely what he did.

The Court finds the inventory search of the vehicle and the duffel bags was reasonable based upon the totality of the circumstances. The inventory search was conducted in accordance with standardized procedures adopted by the North Dakota Highway Patrol. In *United States v. Marshall,* 986 F.2d 1171 (8th Cir.1993), the Eighth Circuit recognized that inventory searches conducted according to standardized police procedures are reasonable. In this case, there existed reasonable regulations relating to inventory procedures, and the procedures employed by the North Dakota Highway Patrol and Trooper Vance were administered in good faith which satisfies the Fourth Amendment.

## C. ABANDONMENT

 Even if an individual establishes a legitimate expectation of privacy in a piece of property, that expectation can later be abandoned. *United States v. Tate,* 821 F.2d 1328, 1330 (8th Cir.1987) (citing *United States v. Biondich,* 652 F.2d 743, 745 (8th Cir.1981)); *see Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). A warrant is not required to conduct a search of abandoned property. *United States v. James,* 353 F.3d 606, 615–616 (8th Cir.2003) (citing *United States v. Tugwell,* 125 F.3d 600,

602 (8th Cir.1997)). In determining whether property has been abandoned the Court must look at the totality of the circumstances and consider the following factors: (1) whether the suspect denied ownership of the property; and (2) whether he or she physically relinquished the property. *United States v. Caballero-Chavez,* 260 F.3d 863, 866–67 (8th Cir. 2001) (quoting *United States v. Liu,* 180 F.3d 957, 960 (8th Cir.1999)). "Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent." *Tugwell,* 125 F.3d 600, 602. The Court should only consider information available to the officer at the time the search was conducted.

▮ The Mitsubishi SUV was found in a ditch along the interstate highway unoccupied and lying on its side. East End Towing was called by the supposed owner/driver of the vehicle and told of the vehicle's location. However, the owner/driver did not meet East End Towing employees at the designated location along the interstate highway to hand over the keys and travel to the site of the accident. The undisputed evidence reveals that Trooper Vance was at the accident site for more than two hours with no sign of an owner/driver/occupant before he undertook an inventory search of the vehicle. The vehicle was first found by Trooper Vance at 8:50 a.m. on February 11, 2004, and the trooper and the towing company left the accident scene at around 11:30 a.m. Based on the objective facts available, and the totality of the circumstances known to Trooper Vance at the time, it reasonably appeared the SUV had been abandoned, and likely due to the contraband contained therein.

In summary, even if this Court concluded that Trooper Vance's inventory search was not reasonable based upon the totality of the circumstances, the vehicle was abandoned which would allow the admission of the evidence seized. All of the objective facts known to Trooper Vance on February 11, 2004, support such a finding. Defendant Truong may have arguably had a legitimate expectation of privacy in the vehicle and its contents at the outset, but that expectation of privacy was lost when 1) the vehicle was abandoned for more than two hours in a ditch along the interstate highway, 2) she, or the owner/driver, failed to communicate with state authorities as required by law, and 3) she, or the owner/driver, failed to rendevous with East End Towing as arranged and travel to the site of the rollover to facilitate the towing of the vehicle. The evidence clearly demonstrates that the SUV vehicle was abandoned the morning of February 11, 2004, when it became readily apparent that no owner/driver/occupant intended to present herself to claim an ownership interest in the vehicle or its contents.

### III. CONCLUSION

The Court **DENIES** the Defendants' Motion to Suppress Evidence (Docket No. 26). The Court **GRANTS** defendant Thanh–Mai Thi Truong's Motion to Join in Co–Defendant's Suppression Motion (Docket No. 27). The Court **DENIES AS MOOT** Truong's Motion to Appear by Video (Docket No. 28).

**IT IS SO ORDERED.**